DECISION
{¶ 1} On February 19, 2002, relator, Daniel Bledsoe, instituted this original action in mandamus seeking an order from this court directing respondent Industrial Commission of Ohio ("commission") to vacate an order denying relator permanent total disability compensation, and to issue a new or amended order based upon the evidence properly before the commission. On March 1, 2002, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court, who rendered a decision which included comprehensive findings of fact and conclusions of law. (Attached as Appendix A.) In that decision, the magistrate concluded that based upon an internal commission memorandum, the commission abused its discretion in overruling relator's objection to the psychological examination by Dr. Michael A. Murphy, who is a business associate of the employer's expert, Dr. Donald J. Tosi. Accordingly, the magistrate recommended that this court grant the relator's request for a writ of mandamus. Respondent commission has filed objections to the magistrate's decision.
 {¶ 2} In this case, the magistrate found and explained that: "Although the magistrate acknowledges that the internal memorandum is not binding on the court regarding the law on conflicts of interest, it is persuasive evidence of what constitutes an appearance of impropriety."
 {¶ 3} Next, referring to the subject memorandum as a "rule," the magistrate opined:
 {¶ 4} "* * * Here, the hearing administrator did not follow the impartiality rule set forth in the memorandum, and the magistrate concludes that the commission therefore violated the prohibition against engaging in activities that give an appearance of impropriety.
 {¶ 5} "* * *
 {¶ 6} "The hearing administrator had a duty to exclude the report of Dr. Murphy. Therefore, the commission, through its hearing administrator, abused its discretion. * * *"
 {¶ 7} The commission has filed objections to the decision of the magistrate and the matter is now before the court for review pursuant to Civ.R. 53(E)(4).
 {¶ 8} Under Ohio law, "[m]andamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." R.C. 2731.01. As set forth in State ex rel. Hattie v. Goldhardt (1994), 69 Ohio St.3d 123, in order to obtain a writ of mandamus the relator must demonstrate: (1) that he or she has a clear legal right to the relief requested; (2) that the respondent has a clear legal duty to grant the relief requested; and (3) that he or she has no adequate remedy at law by which to vindicate the claimed right. Id. at 125, citing State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28, 29.
 {¶ 9} Having examined the magistrate's decision, independently reviewed the file, and considered the relator's objections, we are unable to agree with the magistrate that this internal memorandum gives relator a clear legal right to the relief requested, or that it imposes upon the respondent any clear legal duty. Accordingly, we hereby sustain the commission's objections and reject the decision of the magistrate. Relator's request for a writ of mandamus is denied.
Objections sustained; writ denied.
DESHLER and BROWN, JJ., concur.
 APPENDIX A IN MANDAMUS {¶ 10} Relator, Daniel Bledsoe, filed this original action in mandamus asking the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for permanent total disability ("PTD") because it was based on a medical report that should have been excluded from consideration, and to issue a new order based on evidence that is properly before the commission.
Findings of Fact:
 {¶ 11} In January 1989, Daniel Bledsoe ("claimant") sustained an industrial injury in the course of his employment with Marion Steel Company. The claim was allowed for lumbar strain, thoracic strain, aggravation of preexisting post-traumatic stress disorder, and lumbago. He had several prior claims, allowed for conditions including lumbar strain, acute lumbar radiculopathy, epistaxis, ankle sprain and cervical strain.
 {¶ 12} In September 2000, claimant filed his second PTD application, indicating that he was forty years old, had obtained his G.E.D., and had varied work experience including jobs as a shipping clerk and auto salesman. Beal Lowe, Ph.D., opined that claimant was disabled by the allowed psychological condition.
 {¶ 13} In November 2000, claimant was examined on behalf of the employer by Donald J. Tosi, Ph.D., who found claimant capable of sustained remunerative employment and noted that the current symptoms of post-traumatic stress disorder were of mild severity.
 {¶ 14} Tosi's report is written on the letterhead stationery of "Tosi, Murphy Associates." The heading indicates that the "Tosi, Murphy Associates" consists of two consulting psychologists (Donald J. Tosi, Ph.D. and Michael A. Murphy, Ph.D.), a management consultant, and a medical consultant.
 {¶ 15} On September 11, 2001, claimant was examined on behalf of the commission by Timothy Fallon, M.D., who found no medical evidence of disability that would prevent a return to work and concluded that claimant could perform medium strength work and could return to past work in auto sales.
 {¶ 16} The commission scheduled a psychological examination by Michael A. Murphy, Ph.D., to take place at the commission offices. Claimant objected on the grounds that Dr. Murphy was a partner of Dr. Tosi, the employer's expert. Claimant relied on the following memorandum from Jon Starr, M.D., chief medical advisor for the commission, to all the regional supervisors:
DATE: June 2, 1992
 SUBJECT: Impartiality of Industrial Commission Physicians
 To avoid the challenge of lack of impartiality of medical reports on behalf of the Commission, by decision of the Commission, the choice of an independent physician to provide a medical examination on behalf of the Commission shall exclude the following:
 1. Any physician wh[o] has provided a medical examination on the patient in the past on behalf of the Bureau of Workers' Compensation, the Industrial Commission, or the Employer;
 2. Any physician whose professional practice partner/business associate has provided a medical examination on the patient in the past on behalf of the Bureau of Workers' Compensation, the Industrial Commission, or the Employer;
3. Any physician who has treated the patient;
 4. Any physician whose professional practice partner/business associate has treated the patient;
 5. Any physician who has seen the patient in consultation, either for treatment or to provide medical information to the patient and/or the patient's legal representative;
 6. Any physician whose professional practice partner/business associate has seen the patient in consultation, either for treatment or to provide medical information to the patient and/or the patient's legal representative.
 Exceptions to this policy are reserved to the Commission members.
 {¶ 17} On September 21, 2001, Dr. Murphy examined claimant at the commission offices and reported that the allowed psychological condition was not work prohibitive and that claimant was capable of sustained remunerative employment.
 {¶ 18} In December 2001, a pre-hearing conference was held regarding claimant's objection and whether Dr. Murphy's report should be excluded, and the hearing administrator refused to exclude Dr. Murphy's report, reasoning as follows:
 Claimant's Counsel, at today's pre-hearing has argued that Dr. Murphy's report dated 10/15/2001, should be excluded from the claim file because Dr. Tosi, who shares an office with Dr. Murphy, has also examined claimant.
 The Industrial Commission Medical Examination Manual, Impartiality rule does not preclude a physician from conducting an Industrial Commission Specialist examination when a professional partner in that office has also examined the Claimant for the Industrial Commission or Bureau of Workers' Compensation.
 Therefore, the claim file will be forwarded to docketing to schedule a hearing ***.
 {¶ 19} In January 2002, Dr. Tosi provided a follow-up report.
 {¶ 20} In February 2002, the commission held a hearing on the PTD application and subsequently issued an order denying the requested compensation. The commission relied on Dr. Fallon's opinion regarding allowed physical conditions and on Dr. Murphy's opinion regarding allowed physical conditions, concluding that the allowed conditions did not preclude sustained remunerative employment on the basis of the medical factors. In regard to the nonmedical factors, the commission found that claimant's age of thirty-nine years, together with his G.E.D. and varied work history, demonstrated that he could perform work within his medical restrictions.
Conclusions of Law:
 {¶ 21} In the present action, the issue before the court is whether the commission abused its discretion in overruling claimant's objection to the psychological examination by Dr. Murphy, the business associate or partner of Dr. Tosi, the employer's expert. For the reasons that follow, the magistrate concludes that the commission abused its discretion.
 {¶ 22} This court has observed that conflict-of-interest principles apply when the commission obtains a medical examination of claimant. In Hitchens v Indus. Comm. (1998), Franklin App. 97AP-1494, the court reviewed a summary judgment against a claimant who had sought a declaratory judgment that the bureau acted unethically in appointing a doctor to examine him who had previously worked for the employer. This court held that summary judgment was inappropriate, concluding that the bureau's use of that physician "created at least an appearance of impropriety" on the part of the bureau's employees. The court stated in Hitchens:
Ohio Adm. Code 4121-15-02 provides as follows:
 "(A) It is essential that the public has confidence in the administration of the industrial commission and the bureau of workers' compensation. This public confidence depends in a large degree on whether the public trusts that employees of these agencies are impartial, fair, and act only in the interest of the people, uninfluenced by any consideration of self-interest, except those inherent in the proper performance of their duties. Each employee, of whatever position, should, therefore, maintain the highest standards of personal integrity, since the public often judges the action of an employee as reflecting the standards of the employing agency.
 "(B) The industrial commission and the bureau of workers' compensation are entrusted with the collection and distribution of a large fund. Their employees must respect *** this trust and should welcome public scrunity of the way in which they perform their duties in connection with the administration of this fund. They should be willing to accept restrictions on their conduct that may not be necessary of public employees in other agencies who are not in similar position of trust. They must avoid not only impropriety, but the appearance of impropriety." (Emphasis added.)
 As noted, the bureau's use of Dr. Martinez to conduct a medical examination of appellant created at least an appearance of impropriety, given Dr. Martinez's prior relationship with appellant's employer.***
In Hitchens, the court recognized that this provision did not govern the physician's conduct but applied to any employee of the commission or bureau who appointed the physician to examine claimant or who used the report knowing of the physician's prior work for the employer.
 {¶ 23} The present action does not involve a situation where claimant alleges that Dr. Murphy himself was previously employed by claimant's employer. Rather, claimant argues that Dr. Murphy's professional associate, Dr. Tosi, was currently employed by the employer on the same matter involving the same claimant. In short, claimant protested that Dr. Murphy's professional practice partner/business associate had already provided a medical examination of him on behalf of his employer. Claimant argues that the appointment was contrary to the policy set forth in the internal memorandum quoted above and created an appearance of impropriety.
 {¶ 24} Further, claimant argues that there is a factual error in the hearing administrator's order, in which the administrator erroneously stated that claimant's objection would be overruled because the commission's rule does not preclude a physician from conducting a specialist's examination when a professional partner has also examined claimant "for the Industrial Commission or Bureau of Workers' Compensation." However, here, claimant states that the situation he was protesting was that Dr. Murphy's associate had examined for the employer, not for the commission or bureau as stated in the order.
 {¶ 25} The magistrate concludes the order of the hearing administrator is defective because it indicates reliance on incorrect facts. Moreover, the magistrate concludes that the hearing administrator's decision was an abuse of discretion because it denied claimant's request that the commission not appoint a doctor to examine him who was the professional associate of the doctor hired by the employer in the same matter. To paraphrase the language of the commission's policy, claimant requested that he not be examined on behalf of the commission by a doctor whose professional associate/partner was employed by the claimant's employer for the same PTD issue.
 {¶ 26} The magistrate recognizes that the language of the administrative code regarding ethics is very general. However, the general language about trust, confidence, integrity, impartiality, and fairness is informed by the specific language in the 1992 memorandum. In the memorandum, the chief advisor of the medical section the unequivocally directed commission employees that they "shall exclude" from the choice of commission specialists any examiner whose partner or associate has provided a medical examination of the patient on behalf of the employer.
 {¶ 27} Although the magistrate acknowledges that the internal memorandum is not binding on the court regarding the law on conflicts of interest, it is persuasive evidence of what constitutes an appearance of impropriety. Clearly, the agency's medical director believed that there is a conflict or at least an appearance of impropriety in such circumstances. Here, the hearing administrator did not follow the impartiality rule set forth in the memorandum, and the magistrate concludes that the commission therefore violated the prohibition against engaging in activities that give an appearance of impropriety.
 {¶ 28} The magistrate notes that the focus in this decision is on the commission's actions in choosing Dr. Murphy as an examiner and in overruling claimant's objection. This decision is not based on any impropriety on the part of Drs. Murphy or Tosi, for which there is absolutely no evidence.
 {¶ 29} The hearing administrator had a duty to exclude the report of Dr. Murphy. Therefore, the commission, through its hearing administrator, abused its discretion. Accordingly, Dr. Murphy's report cannot constitute "some evidence" on which the commission could rely in its PTD decision.
 {¶ 30} The magistrate recommends that the court grant a limited writ, returning this matter to the commission to vacate its order denying PTD compensation, to give further consideration to the evidence, and to issue a PTD order granting or denying compensation. As to whether the commission may obtain a new specialist's report or whether it may rely on reports from Dr. Tosi or Dr. Lowe, the magistrate concludes that this matter is within the commission's discretion on remand.